Good morning, your honors. May it please the court. John Paul Richmouth on behalf of LeShawn Lawson, the appellant in this case. Your honors, there are numerous warrants in this case, but I'm going to proceed to the Rodriguez delay issue first and then proceed to the warrants. On Rodriguez, the officer in this case violated the Fourth Amendment when he stopped Mr. Lawson and immediately launched into an unrelated investigation. This unrelated investigation covered eight different topics and lasted several minutes. The officer returned to his car and conducted other tasks but did not pursue the traffic infraction investigation at that point. There was clearly a delay here because even if there were additional traffic investigation, it had to have come after the unrelated investigation. The district court erred in its analysis of the delay issue by essentially just using a reasonableness yardstick, and Rodriguez has rejected that basis. There was no reasonable suspicion to justify this delay. The government has argued on appeal, and the district court also held that the reasonable suspicion to justify the delay was the lack of luggage, the expensive car, and traveling on I-580. Two out of three of those factors were gained during the unconstitutional delay. They're not before this court. They were gained from the unconstitutionality. The third remaining factor is the driving on I-580, and obviously that is insufficient. Even if the court considered these factors that were developed during the delay, the court should not hold that these are sufficient. Let me go back to your premise from Rodriguez. I mean, you suggested because the officer attended to something or focused on something other than the traffic stop, that's automatically going to be too long, that Rodriguez doesn't set a reasonable standard. But Rodriguez specifically talks about the officer looking to other things, and I think the standard that's articulated there is unduly prolonged or measurably extend the duration of the stop. How much longer was the stop extended because of what he was doing? Well, I think that the court should find that it was extended by approximately 5 minutes. Any any How long would the traffic stop have taken if he's only paying attention to the fact that the car didn't have plates and was speeding at a pretty high rate of speed? Well, The traffic stop by itself would have taken longer than 5 minutes, wouldn't it? Perhaps, but that's not the test. Rodriguez rejected a rule where as long as the officer expeditiously investigates or gets his work done quickly, he can go to unrelated matters so long as the entire stop is still shorter than the average stop. Rodriguez says that you can play out the tape and ask, well, how long would this reasonably have taken? And that's a case where the traffic stop, we don't know because the officer stopped investigating it after he sees the driver's license plate. Well, I think we probably do know. We know that traffic stops, I mean, even for less consequential offenses, traffic stops usually take longer than 5 minutes, don't they? Yes, but You've got somebody who's stopped for not having plates and going, I've forgotten, 100 miles an hour or 90 miles an hour or something like that. You would expect that if somebody was actually going to be cited for those offenses, the process is going to take longer than 5 minutes. And so why is this unduly prolonged? Because, well, two answers to that. The first is that this is a pretext stop and the court should find Courts have said pretext stops are okay as long as you've got a real traffic violation, haven't they? Right. But the reasonable time that it takes to wrap up a traffic investigation in a pretext stop should be rather short. In this case, the traffic investigation only amounted to checking the driver's license. But the answer to your Court's question is the Court needs to add the unconstitutional delay in this case to the reasonable time that it would have taken to play out the tape and finish the traffic stop. In other words, the Court should say, okay. I mean, here you would agree that Lawson, Mr. Lawson, consented to the search. That's not disputed here. That's correct. And the consent happened during the unconstitutional delay. So it can't be considered. If the Court looks, I mean, at Gorman, Evans, the evidence learned during the unconstitutional delay. He consented to the search within 5 minutes into the stop. He consented to the search after. That's undisputed. That's right. After and during a 5-minute unrelated unconstitutional delay. And again, it's important not to misinterpret the line in Rodriguez that says that one can figure out how long this would have taken according to a reasonable measure. The Court should say, fine. If the Court, if the police needed 7 more minutes to adjudicate the traffic issue or to prosecute the traffic issue, that needs to be added to the 5 minutes of the delay. The 5 minutes of the delay came at the beginning. It was not simultaneous. If the Court follows. Wait a minute. If you've got one officer, you can walk and chew gum at the same time, but you can't both investigate the potential drug concern here and also write him up for driving without plates and driving at a high rate of speed. And the Supreme Court hasn't said that you can only, I mean, you seem to be arguing that you can't have a traffic stop that leads to something else, that the traffic stop, you've got to quickly attend to what you need to do to write him up for driving without plates and for speeding, and that's the end of it. You can't do anything else. That can't be the law, because that would mean traffic stops never count for anything else. Traffic stops, and that exactly is the law, Your Honor, under Rodriguez. The. Rodriguez says unduly prolonged. It doesn't say you've got to do the traffic ticket first and then let him go. Any measurable extension of the stop. Once the traffic mission is completed, any measurable extension that is not in furtherance of that mission is an unconstitutional bet. But if he pursued writing up the ticket, and that would have taken longer than 5 minutes, that's not unduly prolonged. The traffic ticket would have taken that long. And I think that's the point of Rodriguez. It doesn't say that you call timeout. You're only allowed to work on the traffic ticket. You can't work on anything else. And if you don't take longer than what the traffic ticket would have taken, how does that violate Rodriguez? The Court's suggestion would get rid of the Rodriguez rule entirely. You get rid of traffic stops completely if we take your version, because you couldn't do anything other than write a ticket. You couldn't spend any time doing anything else unless you had a second officer in the car who could work independently. But if you have only one officer, the poor guy can only do one thing at a time. And you wouldn't let him do anything but write up the ticket. And neither would Rodriguez. Rodriguez requires expeditious attendance to the traffic violations. Detouring from that mission causes delay. And if the Court allows an officer to stop somebody and then investigate them for general evidence of crime for five minutes, based on the idea that five minutes is a reasonable traffic stop time, then the rule of Rodriguez ceases to exist. Every officer can investigate anybody for any reason in a traffic stop for five minutes. And that's not the rule of Rodriguez. Roberts. Could you respond to the following proposition? Beyond Mr. Lawson's explicit consent, the officer's search was buttressed by facts providing independent reasonable suspicion that he was involved in criminal activity. The district court here found the absence of luggage despite Lawson's statement that he had spent three weeks in Los Angeles, his stated employment as an entertainer and iron worker, which arguably would not pay to afford the car that he was driving, and also the police officer's knowledge that I.S. 580 was a well-known trafficking route from Los Angeles to San Francisco. Don't these all provide, taken together, grounds, independent grounds for reasonable suspicion that Lawson was involved in criminal activity? They do not, Your Honor. The officer gained all of this knowledge except for the travel on I.S. 580 during the unconstitutional, unrelated investigation in this case. And so none of those are before the Court. Let me proceed to the Equinox Warrant briefly. I'm just wondering if your arguments are based on the assumption that that warrant was not a valid basis for the further investigation. The Equinox Warrant? Well, the last warrant. The last warrant, the Bentley Warrant. Okay, the Bentley Warrant. Yes. The Bentley Warrant is directly connected to the stop. It causes the stop in this case. It is composed of the fruits of the Equinox Warrant and the UPS Warrant and a CI with no indicia of reliability. The Equinox Warrant and the UPS Warrants have to be suppressed. That only leaves in the Bentley Warrant the issue of the CI. The Equinox Warrant is completely lacking in probable cause, only gives one fact about the car, that it is owned by a rental agency in Cincinnati. That has to be suppressed. There's already enough evidence in the record for this court to order that the UPS Warrant should be suppressed as well. The UPS Warrant, however, is very important for this reason. The government would have to prove on remand that the confidential informant is also not a fruit of the UPS Warrant. Therefore, already two legs of the Bentley Warrant have to be suppressed and possibly a third. The Gorman case guides the court on the Bentley Warrant. The case says that an impetus, an illegal impetus to a chain of events can lead to suppression, does lead to suppression all the way down the line. It's clear that the Equinox and UPS Warrants are key and have to be litigated in terms of the fruit of the poisonous tree. I will reserve three minutes of rebuttal if the court doesn't have further questions. All right. Thank you, counsel. Thank you. Good morning. May it please the Court. I'm Douglas Wilson on behalf of the United States. First of all, there are two, three problems with the defendant's contention that the, that Rodriguez makes this an illegal stop. The first is that the officer's conversation with the defendant was not unrelated to his reasons for the stop. He asked him about the tinted windows because he was concerned about officer safety. The reason he was stopped was because the officers called ahead and told them, told him to stop him, and he, you know, happened to find, you know, look into some traffic-related things. But if the prior, if the Bentley Warrant was invalid, that would not have attenuated the stop under Gorman, right? I disagree, Your Honor. I think the, the stop would be attenuated because the, it's the illegality that has to taint the, has to be attenuated. And the illegality, if it occurred, was at the end of December and the stop was at the beginning of February. So it's true that, that there would never, there would, excuse me. The stop was because of the Bentley Warrant. The stop was because of the Bentley Warrant, but any illegality in, in obtaining the Bentley Warrant was at the end of December. And this Court has made clear that, that it's the illegality that the Court has to look to, to determine whether there's an attenuation or not. So, excuse me, the, the fact that 40 days had gone by between the Bentley Warrant and the stop supports our attenuation argument, I think. Because any. But your argument is that, as I understand it, that we don't even have to look at the question of the permissibility of the search warrants, that basically you have a traffic stop here, and the case law supports the idea that if there is a traffic violation, I should say. Traffic violation and the consent are attenuating circumstances. I think the traffic violation may not be sufficient, but I think the consent may have altered the dynamic here. Well, Gorman does say that a traffic violation is not enough. But in Gorman, the traffic violation was that, that the, the vehicle had crossed the yellow line. It had crossed the fog line. In this case, the vehicle was, was, it was a, you know, I don't really want to make a distinction between serious and non-serious, but. Right. The officer just got lucky here. Well, he may. I don't think he got lucky, Your Honor. The, the defendant was talking about whether. And it was clearly set out to, to stop that guy. And the only thing that I think stops, if Bentley is illegal, stops the taint under Gorman, which we have to follow, is the consent. So why don't we talk about the consent? So I, in our view, the consent is valid. The, the district court found it was valid after looking at the, after having both the officer and the defendant testify. The, the defendant was not in custody when the, when he gave the consent. There was only. Does the consent have to be during, like, the Rodriguez reasonable period? Or could the consent be after? Like maybe there's no longer, maybe it's, we would say it was a prolonged stop. I, I think the government would concede that if the consent came after Rodriguez, after the, the reasonable, after the stop ceased to be reasonable, then it would not be a valid consent. It would not, okay. But in this case, and I'm jumping all over the place here, but in this case, the, the, the consent was obtained in the first five minutes after the stop during the period. Well, you're jumping all over the place because this is like a criminal procedure law school exam. This is a whack-a-mole case. This is like, oh, my God, there's so many different issues in this case and trace them all down. That's correct, Your Honor. But, but to go back to my original point, the, the, the Rodriguez sets a, a objective standard. It does not set a subjective standard. And the question is whether the, the stop itself was reasonably prolonged by the, the, by, by other activity, by activity that was not related to the purpose of the stop. In this case, the, the officer took seven minutes to, to run the records check, which he's entitled to do under, under Rodriguez. He obtained consent in less time than that. He obtained consent within five minutes. And that is sufficient to uphold the consent. It's also sufficient to prolong the stop. So in our view, the, the stop or the consent that the defendant gave is both an intervening circumstance, a circumstance that attenuates any, any illegality in the warrants as well as a circumstance that, that prevents the stop from being unduly prolonged. To return briefly to the consent, the, the consent was, was, was, was the district court found that the defendant had validly consented after hearing extensive testimony from both Officer Williams and the defendant. As I mentioned before, the defendant was not in custody. There was only one officer. The, and the district court found that, that the officer did not draw his gun or even have his hand on his gun while he was approaching the defendant. He never told the defendant that he could obtain a search warrant. The officer never told the defendant. And he used a conversational tone throughout. So. Roberts. I think even the, I mean, the defendant does not dispute that Mr. Lawson gave consent. He can, he, I don't believe he's disputed it on appeal. No, he disputed it in the district court. He disputed. So if on appeal, it's not disputed. So I don't know if it's necessary to, to go into detail on this. Well, the only reason I go into detail is because of the Washington case from this court, which is in 490 F second, or F third, where the court said that a consent did not attenuate a, a, a, basically it did not attenuate a prior illegality. And in this case, our position is that not only is the consent valid, but it's, but the district court found it to be valid and the district court found it to be valid after hearing both sides testify and it does attenuate the, the, any prior illegality in the, in the warrants. Okay. So why, I mean, this is maybe just a practical question that I don't really understand what the DEA, why the DEA even had to instruct the local police to stop Lawson when they were tracking his movements the entire way and could have followed him, could have, didn't even have to have a traffic stop in this case and still conducted a search when he ended up at his apartment or his house. I don't know the answer to that. I know that the DEA. I think there's a lot of overkill. It seems like there was a lot of things creating appellate arguments. Well, the, I, I can only speculate. They don't want us to be bored, right? Pardon me, Your Honor? They don't want us to be bored. They decided to create some problems. Well, that might be it. It also might be that the, the, the DEA, you know, wanted to catch the defendant with the drugs and, and wasn't assured of doing that if it, if it followed him. They had him on GPS and they had all these warrants, they had all this evidence. I mean, I. That's correct. But if he went to his house, he might take the cocaine inside or might. But the best way, like the best law enforcement method here is to instruct local police somewhere along his route. Just stop him. Well, for example, if, if the defendant had not had any money or drugs, then the, the police officer probably would have let him go on his way. And that, that in, in that way, the DEA might've concealed that they were investigating the defendant. So, okay. So it's like a method of not. Right. I mean, this is what they call in California, a wall stop. So a wall stop, which is from a case that where they, they conduct a pretextual stop. And, and in this case, the pretext may have turned out to be the only thing that the, the, the consent may have not turned up any, any drugs or money. And in that case, the, the, the, the police officer presumably would have let the defendant go on his way. Briefly, I'd like to talk about the, the, the, the warrants as I, as we set forth in our brief, the, none of the warrants are illegal, but even if they were, they're all subject to the good faith exception. So, and, and I think that good faith exception applies to the last warrant. So the, the, was there any hearing on the good faith exception here? Well, there was no hearing. I mean, the district court didn't reach the good faith exception because. So what, what can we, what, what can we do about it? Well, these are warrants, Your Honor. If, if there weren't findings by the district court. Well, the, it would have to be an exception to the good faith exception. And, and the district court found that there was probable cause. So we think that the record is sufficiently developed to, to rule out the, for example, the bare bones, the exception to the good faith exception. So, and there aren't any other, and the district court also found that there was no Frank's violation. So the court can, this court can look at the, at that to determine that the good faith exception applies. It can look at the district court's decision to determine that the good faith exception applies. The district court did not reach the good faith exception, but if it had, it would have found that, that, well, it, it might have found that, it would have found that the, that all of the warrants were valid. And there was no reason for the DEA agent who told the officers or told the officer to stop the car to think that the, these warrants were invalid. There had been no judicial determination that any of the warrants were invalid. So the district court or the, the DEA agent who told the officer to stop the car was acting on behalf of, of, of what he considered valid warrants at that point. I will, unless the court has any questions, I will submit it. All right. Thank you, counsel. Your Honors, I don't think it's possible to find that the consent in this case was untainted if the court finds under Gorman that there, that a probable cause traffic stop is tainted. The only thing that happens after the probable cause traffic stop is taking the When did he actually consent? Wasn't that? At, at the end of about seven different topics. Where he was going, what he was doing there, why he didn't have the amount of luggage he should have, why he has such a fancy car for, for the jobs that he has expressed, whether he has any illegal items in the vehicle. So he is being questioned and confronted both immediately following the probable cause traffic stop. And I don't think that it's clear that Gorman would not have come out differently if the officers had gotten consent from Gorman as well. The traffic stop, suppressing a PC traffic stop is a much greater sweep of the exclusionary rule than the consent that follows that. If the traffic stop hadn't happened, there would be no consent. And Gorman said if the first illegal stop hadn't happened, there wouldn't have been a second traffic stop. The court, the government, again, is asserting this reasonable time standard, and that is not the rule of Rodriguez. Rodriguez spoke to a case where it was not disputed that the traffic stop part had ended. I mean, that's what Rodriguez repeated several times. And the officer himself had testified that he'd done everything for the traffic stop. That wasn't the case here. The officer had things yet to do if he decided to pursue the traffic stop. Why shouldn't that make a difference? It doesn't matter what the order of the prolongation is. And that shouldn't allow the officers to, to violate the Fourth Amendment just because they start with the impermissible delay. And Rodriguez did plan for that contingency by essentially saying, play out what would have happened with a reasonable traffic stop. But here, it's all at the beginning. I want to ---- Well, doesn't that take away the possibility of using the traffic stop as a device to investigate something else? Because you won't let them investigate something else. You're arguing even though the traffic stop wasn't finished, that unduly prolongs it. You can't stop people just to question them. The court can develop additional reasonable suspicion, for example, as in Wren, from plain view. That tool is not taken away. But the court is very concerned about turning all of these PC traffic stops into drug stops. The last thing I want to say is that the government's supplemental excerpts of record were not before the district court. And they should not properly be considered by this court. I would also ask that the court reconsider the informant discovery issue if there is a remand. Because the informant is becoming more and more important. The informant is now also a fruit of the poisonous tree issue on remand. And on that basis, we respectfully request that the court reverse the order denying suppression. All right. Thank you, counsel. So U.S. v. Lawson is submitted. And the court will enter into a brief recess before we take up the next case. Thank you.
judges: Wardlaw, Clifton, Katzmann